IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARQUIS CANTRELL CLAYTON, <br> Plaintiff, | : <br> : <br> : <br> : | |
| vs. | : <br> : | CIVIL ACTION 20-00291-JB-MU |
| ALFIE PACHECO, *et al.*, <br> Defendants. | : <br> : <br> : | |

Report & Recommendation

Plaintiff, Marquis Cantrell Clayton, an Alabama inmate proceeding *pro se*, filed the instant case alleging violations under 42 U.S.C. § 1983. (Doc. 1). The case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. LR 72(a)(2)(R) for appropriate action. This matter is before the Court on Defendants' motion for summary judgment. (Doc. 19). For the reasons discussed herein, it is recommended that Defendants' motion for summary judgment be **DENIED** at this time.

**I.  Background.**

Plaintiff Clayton alleges that while incarcerated at Fountain Correctional Facility ("Fountain"), Defendants Pacheco, Davis, Foster and Dixon used excessive force against him in violation of the Eighth Amendment.

According to Plaintiff, on May 16, 2020, while being escorted to the restrictive housing unit by Officers Pacheco, Dixon, Foster, and Davis, Clayton complained that his handcuffs were too tight and stated that he would not take another step until the cuffs were loosened.  (Doc. 1 at 9).  Lt. Pacheco then knocked Clayton to the floor and kicked

him.  (*Id*.).   Clayton alleges he backed away and as he was getting up from the floor, Sgt. Davis sprayed him with pepper spray and placed him in a choke hold, punched Clayton in the face, and Officers Foster and Dixon began to punch him in the face and kick him.  (*Id*.).   Clayton further alleges that Officer Dixon dragged him into the lock up by his legs and sprayed him again.   (*Id*.).   Furthermore, Clayton alleges that Lt. Pacheco conspired with the other officers to cover up the use of force by creating a false disciplinary report, claiming that Clayton slipped out of his hand cuffs and hit Pacheco in the head, all while failing to provide Clayton with a body chart after the beating and use of chemical agent.   (*Id*. at 9).

Plaintiff Clayton seeks compensatory and punitive damages from each defendant, as well as a trial by jury.   (Doc. 1 at 8, 10). The Defendants have answered Plaintiff's suit and submitted a Special Report in denial of the allegations asserted against them.   (*See* Docs. 17, 18).   The Court has converted these pleadings into a Motion for Summary Judgment (doc. 19), to which Plaintiff has responded (doc. 20).   This motion is now ripe for consideration.

II.     **Motion for Summary Judgment.**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (emphasis in original); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary

judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis in original) (citation omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted).

The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. *Garczynski*, 573 F.3d at 1165. "A genuine dispute requires more than 'some metaphysical doubt as to material facts.'" *Id*. (citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce

3

substantial evidence in order to defeat a motion for summary judgment. *Id*.   In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).   More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) ("In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations.").

## III.   Discussion.

The Eighth Amendment's prohibition against cruel and unusual punishment, U.S. Const. amend. VIII, governs the use of force by prison officials against convicted inmates. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).   In order to establish an Eighth Amendment excessive force claim against the defendant, Plaintiff must prove both an objective and subjective component.[1]   That is, he must show that the alleged wrongdoing

---

[1] Plaintiff Clayton proceeds pursuant to 42 U.S.C. § 1983.   "In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law."   *Martinez v. Burns*, 459 F. App'x 849, 850-851 (11th Cir. 2012) (citing *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005)).   There is no dispute that the named Defendants, as employees of the Alabama Department of Corrections, are state actors for purposes of this action. Thus, to establish his asserted claims, Plaintiff must establish that each named defendant, personally, acted to deprive

was objectively "harmful enough" to establish a constitutional violation and that the defendants "act[ed] with a sufficiently culpable state of mind; i.e., that they acted maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992) (citations omitted); *see also Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1196 (11th Cir. 2003) (to satisfy the object conduct, the plaintiff must show the complained of conduct "shocks the conscience").  Both inquiries are contextual, and "the objective harm inquiry is responsive to contemporary standards." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010).  While not every "malevolent touch" by a prison guard amounts to excessive force, a de minimis use of force is cognizable under the Eighth Amendment if it "is not of a sort repugnant to the conscience of mankind."  *See Wilkins v. Gaddy*, 559 U.S. 34, 37-38, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (noting that an inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim) (internal quotation marks and citation omitted).  "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  *Id*. at 38.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting if applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L.Ed.2d 156). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the

---

him of a constitutional right.

> threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S. Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skirtch v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002). Accordingly, in determining whether force used was excessive, relevant factors include the "need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). Notably, prison officials "acting to preserve discipline and security" are given "broad deference" when evaluating whether force used was excessive or not. *Pearson v. Taylor*, 665 F. App'x 858, 863-64 (11th Cir. 2016).

Here, Defendants have failed to carry their summary judgment burden. Specifically, the special report contains confusing, if not conflicting, evidence in support of their denial of the allegations against them and is insufficient (without a more thorough explanation) to describe their version of the event and show that there is no dispute of material fact.

First, the Incident Report submitted reflects a date of May 15, 2020 and indicates that at approximately 7:05 p.m., Clayton refused several verbal commands given by Defendant Pacheco to submit to handcuffs, after he threatened an officer in the health

6

care unit.² (Doc. 18-1 at 1). According to the Incident Report, Defendant Dixon assisted by restraining Clayton to the wall by Clayton's arms, where Clayton threatened Defendant Dixon by stating, "I'm about to bit you[r] nose off". (Doc. 18-1 at 1). Clayton continued to resist restraints and verbal commands to stop, and Defendant Officers Dixon and Pacheco unsuccessfully attempted a two-on-one take down of Clayton. Officer Nichols then assisted by grasping Clayton's ankles, and Clayton, as well as Defendants Dixon and Pacheco, fell on top of Officer Nichols (causing Officer Nichols to suffer a laceration to his left forearm). Defendants maintain Clayton continued to refuse commands and restraints, and Defendant Dixon administered two baton strikes to Clayton's lower side area. Clayton continued to be combative, and Defendant Pacheco instructed Officer Penn to administer spray, and Officer Penn administered a burst of Sabre Red to Clayton's facial area. Clayton was then placed in restraints and escorted to the Health Care Unit for decontamination, where Nurse Lorrenzo Torrez completed a medical assessment and body chart of Clayton at approximately 7:10 p.m., which indicated a small abrasion to the knee. (Doc. 18-1 at 1). According to the Incident Report, thereafter, at approximately 7:15 p.m., Clayton was placed in a crisis cell for making statements of being "homicidal and suicidal". (Doc. 18-1 at 1-2). The Incident

---

² Defendant Pacheco attempted to place restraints on Clayton after Clayton threatened Officer Jasmine Robinson. According to the Incident Report, on May 15, 2020, Officer Jasmine Robinson was assigned as the Health Care Rover at Fountain. (Doc. 18-1 at 1). At approximately 7:05 p.m., Clayton was in the health care line and stated to Officer Robinson, "You're the reason I'm about to catch another murder case." (*Id*.). As Clayton exited the health care unit into the main hall, Officer Robinson notified Defendant Pacheco of the incident, via handheld radio, and Defendant Pacheco intercepted Clayton on the main hall, where Clayton refused commands to submit to handcuffs. (*Id*.).

Report also indicates that Clayton received a disciplinary action for threats and failure to obey a direct order.

This conflicts with Plaintiff Clayton's allegations that the incident of the complaint occurred on May 16, 2020, that he was handcuffed when the incident occurred, and that Sgt. Davis sprayed him with pepper spray. (Doc. 1 at 8-9). The Incident Report also indicates that Officers Penn and Nichols were major participants in the incident, but Plaintiff's complaint is devoid of allegations against them.

Next, the three body charts attached to the Incident Report raise further questions, rather than support. Defendants have submitted the body charts of Inmate Britterrin Campbell, Plaintiff Marquis Clayton, and Defendant Officer Dixon. (Doc. 18-1 at 3-5). The body charts all reflect an examination date of May 16, 2020, indicate that Defendant Officer Pacheco requested the body charts, and note that Nurse Tracy Wagner conducted the examinations at 4:50 p.m., 4:55 p.m., and 5:00 p.m., respectively. (Doc. 18-1 at 3-5). The body chart of Inmate Campbell states that he told the nurse, "they just sprayed me" and no visible injuries were observed. (Doc. 18-1 at 3). The body chart of Plaintiff Clayton states that he told the nurse, "Man, my lip is busted" and a small laceration to the corner of his right lower lip was observed. (Doc. 18-1 at 4). The body chart of Defendant Officer Dixon states that he told the nurse, "I hit the concrete" and a small abrasion with swelling to his right knee was observed. (Doc. 18-1 at 5).

Last, Defendants have submitted the personal affidavits of Officers Pacheco, Dixon, Davis, and Foster, which do not sync with the submitted incident report nor with each other, as they contain conflicting dates, times, and details:

Defendant Perry Davis declares that, on May 15, 2020, at approximately 5:00 p.m.,

he entered the shift office with Clayton. Defendant Pacheco informed Clayton that due to his previous negative behavior towards officers, Clayton would be placed in Restrictive Housing. Clayton complied and was escorted to the health care unit for an assessment. On the way to the health care unit, Clayton slipped out of his handcuff and attempted to run down the hall. Defendant Pacheco was hit in the head by the handcuff, and Clayton was trying to bite the Correctional Staff. Defendant Davis declares he was instructed to and did administer a burst of Sabre Red to Clayton's facial area. Clayton was placed back in restraints and taken to the Restrictive Housing Unit, without further use of force. (Doc. 18-3).

Defendant Travontay Dixon avers that on May 15, 2020, he assisted Defendant Pacheco with restraining Clayton, who was combative. Defendant Dixon avers that he restrained Clayton by the arm, against the wall. Continuing to resist, Clayton stated he was going to bite Defendant Dixon's nose off. Defendant Dixon further avers that he and Defendant Pacheco attempted, unsuccessfully, a two-on-one takedown of Clayton. When that failed, Defendant Dixon avers that he retrieved his baton and struck Clayton with two forehand swings to Clayton's lower body. Defendant Dixon avers that the officers regained control of Clayton and he was taken to the health care unit for assessment. (Doc. 18-4).

Defendant Alfie Pacheco affirms that he assisted in escorting Clayton to the restrictive housing unit on May 16, 2020, following a previous incident that Clayton was involved in, where an officer was injured. Defendant Pacheco affirms that during the escort, Clayton slipped his handcuffs off, and Defendant Pacheco was hit in the head with the handcuffs. Clayton was ordered to stop by all officers involved, but Clayton refused all direct orders and refused to submit to restraints. Defendant Pacheco affirms he ordered his "Sergeant" to administer a chemical agent in attempt to stop Clayton's combative behavior. Clayton then complied with verbal commands, but not before injuring another officer. Defendant Pacheco affirms all force used was necessary to gain control of Clayton. (Doc. 18-2).

Defendant James Foster affirms that he assisted with the escort of Clayton on May 16, 2020 and witnessed no excessive force used against Clayton. Defendant Foster affirms that Clayton became aggressive, i.e., bucking and kicking towards Defendants Davis, Pacheco, and Foster. Defendant Foster further avers that only the force necessary to restrain inmate Clayton and prevent harm to Clayton and the officers was utilized. (Doc. 18-5).

At this time, the record evidence raises more questions than it answers, and "the Court cannot simply accept the officers' subjective version of events, but rather must reconstruct the event in the light most favorable to the non-moving party" to determine

9

whether the use of force was excessive." *Robinson v. Sauls*, 2021 WL 716733, *9, __ F.Supp.3d __ (N.D. Ga. Feb. 24, 2021) (quoting *Filsv. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011). "When the nonmovant has testified to events, we do not ... pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record" to form the story of the events. *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (en banc). Notably, "a plaintiff's own testimony may be sufficient to withstand summary judgment." *Khoury v. Miami-Dade Cty. Sch. Bd.*, No. 18-11430, 2021 WL 2817612, *6, __ F.4th __ (11th Cir. 2021) (internal quotation and citation omitted).

Here, the record reflects that Plaintiff suffered a busted lip, supporting his version of the event that he was punched in the face but also supports Defendants' version of the facts that Plaintiff was combative and that necessary force was implemented to control the situation. Also, the record is devoid of a body chart showing that Plaintiff was decontaminated on either May 15 or 16, 2020, yet confirms (per Defendant Davis' affidavit) that Clayton was sprayed with pepper spray, supporting Plaintiff's version of events. However, the record does confirm that Plaintiff was medically assessed on May 16, 2020, lending support to Defendants' version of the facts. The record currently contains conflicting versions of the facts that may not be resolved on summary judgment. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1139-40 (11th Cir. 2007) (citing *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986) ("[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a

genuine dispute is found, summary judgment must be denied.")).[3]   While the ambiguity of Defendants' special report may be easily clarified and explained, Defendants are not entitled to summary judgment until and unless the conflicting version of events offered by the Incident Report, Defendants' affidavits, and the Statement of Facts provided in Defendants' Special Report are reconciled.   (*See* Docs. 18 at 3-4; 18-1; 18-2; 18-3; 18-4; 18-5).

## IV.   Conclusion.

Based on the foregoing, the undersigned recommends that summary judgment should be **DENIED** in favor of Defendant as to the Eighth Amendment excessive force.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

## Notice of Right to File Objections

---

[3]   *See also Kingsland v. City of Miami*, 382 F.3d 1220, 1227 (11th Cir. 2004), *cert. denied, De Armas v. Kingsland*, 543 U.S. 919, 125 S. Ct. 80, 160 L. Ed. 2d 203 ("The plaintiff's word is merely countered by the defendants' testimony.   Given the standard of review at the summary judgment state, we must accept [Plaintiff's] version of the facts as true.) (citing *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279 n.9 (11th Cir. 2002)).

> When competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible.  *See Felicinano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).   Indeed, if "the only issue is one of credibility," the issue if factual, and a court cannot grant summary judgment.   *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742-43 (11th Cir. 1996).

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

      A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala.Gen. LR. 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this 20th day of August, 2021.

                                        s/P. Bradley Murray
                                        UNITED STATES MAGISTRATE JUDGE